IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| HAROLD RAY CLIFTON, | ) | |
| | ) | |
| Debtor. | ) | Case No. 10-43681-drd-7 |
| | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| ROBERT TIMOTHY KYTE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Adversary Case No. 10-04329-drd |
| HAROLD RAY CLIFTON, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION**

This adversary proceeding comes before the Court on the Motion for Summary Judgment (the "Motion") filed by Robert Timothy Kyte (the "Plaintiff") against Harold Ray Clifton (the "Debtor"). Plaintiff seeks a determination that the judgment debt owed to him by the Debtor, in the amount of $97,767.33 be deemed nondischargeable under 11 U.S.C. §§523(a)(2), 523(a)(4) and 523(a)(6), and that the doctrine of collateral estoppel should bar relitigation of this issue. The following constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 7052 of the Federal Rules of Bankruptcy Procedure. For the reasons set forth below, the Court finds that the Debtor is collaterally estopped from relitigating the issue of false representation or actual fraud as that has necessarily been determined by the state court in the prior litigation, and therefore, the judgment debt is non-dischargeable pursuant to §523(a)(2)(A).

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Plaintiff was a shareholder in a Hawaii corporation, Comfort Creams, Inc. (the "Company"), a company in the business of manufacturing and marketing an athletic cream called Lotion Aid. The Debtor is a licensed real estate broker. In 2001, the Plaintiff and the Debtor discussed the possibility of having the Debtor involved in the Company to help test market Lotion Aid. The discussions culminated in a letter dated November 7, 2001, in which the Plaintiff proposed the following terms: the Debtor would become a stockholder and board member of the Company, the Debtor would be paid a 10% commission for sales he generated, and the Debtor would receive stock dividends when the Company was in a positive financial position. Most significantly, the parties agreed that the Debtor would be "listed first on the credit line" to fund the Company and its launch of Lotion Aid.

The Debtor eventually expressed concern about the risk he was taking by investing in the Company. As a result, the parties executed a Suretyship Agreement and Guaranty (the "Guaranty") wherein the Plaintiff and his partner agreed to guaranty and indemnify the Debtor on the $200,000 line of credit. Over time, the Debtor drew down a total of $75,000 for the Company on the credit line. At that point, no further money was drawn and the credit line was cancelled by the bank.[1] As a result, the Company never got off the ground. The Plaintiff attributed the Company's failure to the Debtor's refusal to fully fund the line of credit, and interpreted the Guaranty as being contingent on the Debtor doing just that – he considered himself relieved of any obligation to reimburse the Debtor.

---

[1] According to the Debtor's wife, her name was also on the credit line. As soon as she found out that her husband was drawing on it to fund Comfort Creams, she objected "strongly" and the credit line was cancelled. Pl. Ex. C

On June 27, 2005, the Debtor filed an Affidavit of Equitable Interest with the Cass County Recorder's Office claiming an equitable interest in property owned by the Plaintiff. The Affidavit stated that the Plaintiff and his partner owed the Debtor $77,381.35 plus interest and that a release of equitable interest would be filed upon the payment of the indebtedness. The Plaintiff resigned as an officer of the Company in October of 2005.

About the same time, the Plaintiff hired the Debtor to sell the Plaintiff's real property. Even though the Plaintiff believed that the Debtor had breached his agreement to fund the Company, he felt a "moral obligation" to allow the Debtor to recover some of his loss. [2] The parties executed an Exclusive Right to Sell Contract with a two-year term. On December 8, 2006, the Debtor obtained an offer to purchase the Plaintiff's property for $400,000; the Plaintiff accepted the offer and the transaction was set to close by the end of the year. Before the closing, the Debtor faxed a signed message to the Plaintiff stating that the indebtedness was an issue with the Company, and not with the Plaintiff. Pl. Ex. A-12.[3] The Plaintiff then signed the real estate contract for the sale of his property. On the Settlement Statement, the Debtor claimed that he was owed $98,263.30 in addition to his commission fees of $16,000. The Plaintiff objected to the disbursement of the disputed amount. Thereafter, the parties agreed to escrow $98,263.30 with the title company pending the resolution of the dispute. Litigation ensued.

---

[2]In his deposition, the Plaintiff testified that he and the Debtor had a conversation to the effect that once the property was sold, the Debtor would release him from any claim for reimbursement in connection with the Guaranty. Pl. Ex. B.

[3]Soon thereafter, the Debtor faxed a revised statement to the Plaintiff that read that the indebtedness was not an issue with the Plaintiff "or any other note signed by Tim Kyte on behalf of Comfort Creams, Inc." Pl. Ex. A-11.

In January of 2007, the Debtor filed a lawsuit in the Circuit Court of Cass County, Missouri (the "State Court"), styled *Harold Ray Clifton v. Robert T. Kyte* (the "State Court Litigation"), asserting breach of contract against the Plaintiff based on the Guaranty. The Plaintiff counterclaimed against the Debtor, asserting breach of contract, fraudulent misrepresentation, breach of fiduciary duty, slander of title and duress. Trial was held in February of 2010. The jury found for the Plaintiff and against the Debtor on the counts of fraudulent misrepresentation, breach of fiduciary duty and slander of title; the State Court also awarded the Plaintiff his attorneys' fees. The State Court entered judgment for the Plaintiff in accordance with the jury's verdict, and awarded damages in the principal sum of $114,263.30, plus interest and costs (the "Judgment").[4]

Months following the entry of the Judgment, the Debtor filed for protection under Chapter 13 of the Bankruptcy Code, and this adversary proceeding followed. Plaintiff argues that the findings made in the State Court Litigation and incorporated in the Judgment support a determination that the debt arising from the Judgment is nondischargeable, that those findings are binding on this Court under the doctrine of collateral estoppel, and that he is therefore entitled to summary judgment as a matter of law.

## II. LEGAL ANALYSIS

### A. Standard for Summary Judgment

Federal Rule of Bankruptcy Procedure 7056(c), applying Federal Rule of Civil Procedure

---

[4]The Judgment consisted of actual damages of $114,263.30 plus 9% interest accruing on the sum of $98,263.30 from December 29, 2006, and 9% interest on the sum of $16,000 from the date of the jury's verdict, plus costs and post-judgment interest at the rate of 9%. Pl. Ex. G, pp. 25 - 27. The escrowed funds, less the escrow agent's fee, were later released to the Plaintiff. According to the Plaintiff, by the petition date, additional interest had accumulated on the damages and costs such that the indebtedness was $97,767.33. The Plaintiff requested that this Court take judicial notice of the correctness of this calculation. The Court declines to do so.

56(c), provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex v. Catrett*, 477 U.S. 317, 322 (1986). The moving party has the initial burden of proving that there is no genuine issue as to any material fact. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 161 (1970). Once the moving party has met this initial burden of proof, the non-moving party must set forth specific facts sufficient to raise a genuine issue for trial, and may not rest on its pleadings or mere assertions of disputed facts to defeat the motion. *Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "A 'genuine issue' in the context of a motion for summary judgment is not simply a 'metaphysical doubt as to the material facts.' " *Id.* Rather, "a genuine issue exists when the evidence is such that a reasonable fact finder could find for the non-movant." *Buscaglia v. United States*, 25 F. 3d 530, 534 (7th Cir. 1994). When reviewing the record for summary judgment, the court is required to draw all reasonable inferences in favor of the non-movant; however, the court is "not required to draw every conceivable inference from the record – only those inferences that are reasonable." *Bank Leumi Le-Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir. 1991).

### B. Collateral Estoppel

Collateral estoppel principles apply in discharge exception proceedings. *Grogan v. Garner*, 498 U.S. 279, 284 n.11 (1991). "Collateral estoppel is a legal doctrine that 'bar[s] the relitigation of factual or legal issues that were determined in a prior...court action,' and applies to bar relitigation in federal court of issues previously determined in state court." *Johnson v. Miera*, 926 F.2d 741, 743 (8th Cir. 1991). When determining whether collateral estoppel arises from a prior state court

judgment, federal courts apply the substantive law of the forum state in whose courts the prior

judgment was entered.  *Osborne v. Stage*, 321 B.R. 486, 493 (B.A.P. 8th Cir. 2005); *Factors v.*

*Calvert (In re Calvert)*, 105 F.3d 315, 319 (6th Cir. 1997); *Pahlavi v. Ansari (In re Ansari)*, 113 F.3d

17, 19 (4th Cir. 1997).

Missouri courts consider four factors in applying collateral estoppel: (1) the issues in the

present case and prior adjudication must be identical; (2) the judgment in the prior adjudication must

be on the merits; (3) the party against whom collateral estoppel may apply must have participated

as a party or been in privity with a party to the prior adjudication; and (4) the party against whom

the doctrine may apply must have had a full and fair opportunity to litigate the issue in the prior suit.

*Fisher v. Scarborough (In re Scarborough)*, 171 F.3d 638, 640 (8th Cir. 1999); *Shahan v. Shahan*,

988 S.W.2d 529, 531 (Mo. 1999).

In this case, it is undisputed that the State Court conducted a trial on the merits, a valid

judgment was entered, and both parties had a full and fair opportunity to litigate.  The only element

of collateral estoppel in question is whether the issues sought to be precluded from relitigation are

identical to the issues that were decided by the State Court.  When making the determination that

an issue was actually litigated and was necessary to the decision in the prior proceeding, the court

should examine the entire record of the earlier case.  *Miera*, 926 F.2d at 743.  Although the actual

Judgment contains no specific findings of fact, this Court has reviewed the jury instructions and

finds them compelling.

### C.  Non-dischargeability under 11 U.S.C. §523(a)(2)(A)

Section 523(a)(2)(A) incorporates the elements of common law fraud.  *Field v. Mans*, 516

U.S. 59, 79 (1995). To obtain a determination that a debt is non-dischargeable under that section,

a creditor must prove five discrete elements: 1) that the debtor made a representation; 2) that the debtor knew the representation was false at the time it was made; 3) that the debtor made the representation deliberately and with the intention and purpose of deceiving the creditor; 4) that the creditor relied on the representation; and 5) that the creditor sustained the alleged loss as the proximate result of the representation having been made. *In re Guske*, 243 B.R. 359, 362 (B.A.P. 8th Cir. 2000).   In order to determine whether the issue of the Debtor's fraudulent intent was necessarily decided by the Judgment, the Court must compare the elements that were established in the State Court Litigation with the elements that must be established to except a debt from discharge under this section.   If the Court concludes that the State Court's finding of liability for fraud necessarily required a finding that the Debtor obtained money by a false representation or actual fraud as construed by §523(a)(2)(A), the Debtor is collaterally estopped from contesting dischargeability on those grounds.    In other words, the question is whether the State Court Litigation, which resulted in a finding of liability for fraudulent misrepresentation, also resolves the question of whether Plaintiff's losses were proximately caused by Debtor's actions such that the debt arising from such actions is non-dischargeable pursuant to §523(a)(2)(A).   This Court concludes that it does.

To succeed in a fraud claim under Missouri law, a plaintiff must prove: (1) defendant made a material representation; (2) with knowledge of its falsity; (3) with intent that plaintiff rely on that representation; (4) that the plaintiff was ignorant of the falsity; (5) that the plaintiff justifiably relied upon the representation; and (6) that plaintiff was damaged by that representation. *Cole v. Homier Distributing Co., Inc.,* 599 F. 3d 856, 862 (8th Cir. 2010).   In the State Court Litigation, the jury found for the Plaintiff and against the Debtor on the count of fraudulent misrepresentation.  The

following language from the verdict director reveals the basis of the ultimate determination of

liability:

> Your verdict must be for defendant Kyte if you believe:
>
> First, plaintiff Clifton represented to defendant Kyte that he would release any claim against Kyte with respect to any asserted obligations under the Suretyship Agreement and Guaranty, and
>
> Second, such representation was made by plaintiff Clifton with the intent that defendant Kyte rely on such representation in employing plaintiff Clifton as his broker, and
>
> Third, the representation was false, and
>
> Fourth, plaintiff knew that it was false at the time the representation was made, and
>
> Fifth, the representation was material to the employment of Clifton as Kyte's broker, and
>
> Sixth, defendant Kyte relied on the representation in employing plaintiff Clifton as his broker, and such reliance was reasonable under the circumstances, and
>
> Seventh, as a direct result of such representation, defendant Kyte sustained damage.

Pl. Ex. G, Instruction No. 14.  Thus, it is clear that each of the elements necessary to establish the

dischargeability exception under §523(a)(2)(A) – a representation made by the Debtor, the falsity

of the representation, the Debtor's knowledge of its falsity, the Debtor's intent to deceive the

Plaintiff, the Plaintiff's reliance and resulting loss – are contained in the State Court Litigation

record.

Despite the overwhelming evidence that the fraud issue was already litigated and decided

by the State Court, Debtor asserts that collateral estoppel is inappropriate in this case because

bankruptcy courts are vested with exclusive jurisdiction to determine the nondischargeability of

debts and are not confined to a review of the record of the prior state court proceeding; the Debtor

cites *Brown v. Felsen*, 442 U.S. 127 (1979), in support of his position.  That case is inapplicable under these facts.   The *Brown* case has been interpreted to mean that the exclusive jurisdiction granted to bankruptcy courts to determine dischargeability questions prevents application of res judicata in cases where the issue has not actually been litigated.  *In re Goetz*, 134 B.R. 367, 369 (Bankr. W.D. Mo. 1991).   In *Brown*, the state court did not adjudicate the issue of fraud; rather, the judgment was based solely on a stipulation providing for recovery.   Neither the stipulation nor the resulting judgment indicated the cause of action on which liability was based.   The debtor argued that because the creditor did not specifically litigate in state court whether the debt was incurred by fraud, the creditor was precluded from seeking a determination of that issue in bankruptcy court. The *Brown* court rejected that argument, ruling that the bankruptcy court was not bound by res judicata.  It reasoned that the issue of fraud was never litigated in the prior proceeding, and was now "for the first time, squarely in issue."  *Brown*, 442 U.S. at 138.   Here, unlike in *Brown*, the State Court's determination of fraud was not based on a settlement agreement.   The Plaintiff filed a counterclaim alleging fraud, both sides participated in discovery and were present at trial, and the Judgment specifically references the Debtor's liability based on fraud.   Consequently, this Court would not be determining that issue "for the first time."

Next, the Debtor argues that the record does not support two of the Plaintiff's assertions: 1) that the Debtor obtained his real estate commission by fraudulent means; and 2) that the Debtor fraudulently induced the Plaintiff to sell his property.  The Debtor points to the Plaintiff's deposition during which he testified that he felt a "moral obligation" to list his property with the Debtor, a statement the Debtor claims contradicts the allegation that the Plaintiff was fraudulently induced to do so.  The Plaintiff's admission that he felt that way does not negate the elements of fraudulent

inducement.  In fact, the jury found that the Debtor induced the Plaintiff to retain him as a broker

by making false representations, and that finding resulted in the Judgment in Plaintiff's favor.  In

essence, the Debtor is attempting to relitigate facts already addressed and established in the State

Court Litigation.  Principles of issue preclusion prevent this.  As the Supreme Court stated in

*Grogan*, 498 U.S. at 285, "...all creditors who have secured fraud judgments, the elements of which

are the same as those of the fraud discharge exception, will be exempt from discharge under

collateral estoppel principles."

Lastly, the Debtor contends that he never "obtained" the money that the Plaintiff claims is

nondischargeable as required by §523(a)(2)(A).  The money claimed by the Debtor (reimbursement

of the $75,000 plus interest that he invested in Comfort Creams) was  never paid to the Debtor; it

was placed in escrow by agreement of the parties instead.  This Court is not persuaded by that

argument.  The Plaintiff's claim has two components: 1) the sum attributable to the sales proceeds,

and 2) the Debtor's  $16,000 brokerage fee.   In the first place, the $16,000 fee was not placed into

escrow – it was indisputably "obtained" by the Debtor.  (That is reflected in the award of damages

contained in the Judgment.)  In addition, the validity of the $16,000 brokerage fee "earned" by the

Plaintiff was a key issue in the State Court Litigation.  The Plaintiff argued that but for the Debtor's

misrepresentation that he would release the Plaintiff from any obligation under the Guaranty, he

would not have entered into the listing agreement to pay the Debtor a commission.  The $16,000 fee

was specified as a part of actual damages in the Judgment, a finding by which the Debtor is bound.

As to the remainder, it is well-settled that once it is established that specific money or

property has been obtained by fraud, any debt arising therefrom is excepted from discharge.  *See

Cohen v. de la Cruz*, 523 U.S. 213, 218(1998)(any amounts traceable to the sum found to be

10

obtained by fraud, including attorney's fees and costs, fell within the exception to discharge).  As

the Supreme Court noted, "the phrase 'to the extent obtained by' in §523(a)(2)(A)...does not impose

any limitation on the extent to which 'any debt' arising from fraud is excepted from discharge." *Id.*

*See also In re M.M. Winkler & Associates,* 239 F.3d 746, 749 (5th Cir. 2001)(" [T]he plain meaning

of the statute is that debtors cannot discharge any debts that arise from fraud so long as they are

liable to the creditor for fraud.").  Thus, since the Debtor's brokerage fee is nondischargeable under

§523(a)(2)(A), the entire debt, including the portion attributable to the escrowed funds, is

nondischargeable.[5]

### III.  CONCLUSION AND ORDER

For the reasons cited above, the Motion for Summary Judgment is hereby granted in part.

The Court finds that the elements of common law fraud under Missouri law closely mirror the

requirements of §523(a)(2)(A), and thus are sufficiently identical to meet the test for collateral

estoppel.  Therefore, the Debtor is estopped from challenging the findings necessarily made in the

Judgment as to his fraudulent misrepresentations.  Plaintiff is granted summary judgment on this

point.  Since this Court holds that the indebtedness is non-dischargeable under §523(a)(2)(A), the

Court denies as moot the claims that the indebtedness is dischargeable under §§523(a)(4) or

523(a)(6).

A separate Order will be entered in accordance with Bankruptcy Rule 9021.

---

[5]Finally, the Debtor argues that there is one disputed material fact: the Plaintiff was
unaware that the Debtor had asserted an equitable interest in the proceeds of the real estate sale
until his deposition.  This is immaterial.  The only relevant point is that the Plaintiff was unaware
of the Affidavit of Equitable Interest at the time he retained the Debtor as his broker and agreed
to pay him a commission, and that is not controverted.

Dated: June 7, 2011                    /s/ Dennis Dow
                                       THE HONORABLE DENNIS R. DOW
                                       UNITED STATES BANKRUPTCY JUDGE